## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff*, | § | |
| | § | Criminal No.   4:22-CR-151-1 |
| v. | § | Civil No.        4:25-CV-101 |
| | § | |
| KYLE ANDREW COKER, | § | |
| *Defendant*. | § | |

## UNITED STATES' MEMORANDUM IN OPPOSITION
## TO AND MOTION TO DISMISS COKER'S
## 28 U.S.C. § 2255 MOTION

Kyle Andrew Coker moves to vacate, set aside, or correct his conviction under 28 U.S.C. § 2255, asserting that he received ineffective assistance of counsel during his guilty plea and at sentencing. Doc 66.[1] But because it is untimely under 28 U.S.C. § 2255(f), the Government respectfully moves this Court to dismiss Coker's motion. Alternatively, because Coker's vague and conclusory claims do not prove that he received ineffective assistance of counsel, this Court should deny Coker's motion.

---

[1] Citations to "Doc. __" refer to the numbered documents in the docket for case No. 4:22-CR-151-1. Citations in the format "PSR ¶ __" refer to the May 26, 2023, presentence investigation report (Doc. 38), and the corresponding paragraph numbers therein.

# I.    Background

## A.    Coker agrees to sell methamphetamine to a confidential source.

In 2021, a Drug Enforcement Agency agent setup a purchase of methamphetamine to Coker based on information provided by a confidential source (CS). Doc. 38 at 3 (PSR ¶ 5). Coker communicated with the CS about his arrival time at the agreed-upon location for the drug transaction. Doc. 38 at 3 (PSR ¶ 6). Law enforcement agents then observed Coker arrive and detained him to continue their investigation. Doc. 38 at 3 (PSR ¶ 6).

A search of Coker's vehicle yielded multiple plastic bags containing methamphetamine and a 12-guage shotgun with three live rounds. Doc. 38 at 3–4 (PSR ¶¶ 7, 9). The methamphetamine weighed a combined total of 131.9 grams and was 64 percent pure. Doc. 38 at 4 (PSR ¶ 9).

Coker was subsequently charged by indictment with possession with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii); and felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Doc. 38 at 3 (PSR ¶ 1); Doc. 1.

### B.     Coker pleads guilty pursuant to a plea agreement and probation prepares a PSR.

Coker pleaded guilty to Count Two in his indictment, pursuant to a plea agreement. Docs. 29, 55. Prior to accepting Coker's guilty plea, the Court ensured that Coker's plea was knowing and voluntary. Doc. 55. After placing Coker under oath, the Court inquired about his age and educational background. Doc. 55 at 5–6. The Court then inquired about Coker's mental health history, learning that Coker had been previously treated for ADHD and bipolar disorder. Doc. 55 at 6. Coker averred that despite being unmedicated for those conditions, he understood the re-arraignment proceedings. Doc. 55 at 6.

Next, Coker testified that he understood the elements of the charge to which he was pleading guilty and the possible penalties—including a maximum possible sentence of ten years in prison. Doc. 55 at 9. Coker also stated that he understood that he had the right to plead not guilty, proceed to a jury trial, subpoena and cross-examine witnesses, and testify. Doc. 55 at 12–13. The Court then discussed with Coker's attorney that Coker's plea agreement included a waiver of his right to appeal his conviction and sentence and to challenge his conviction and sentence

collaterally—apart from claims of ineffective assistance of counsel. Doc. 55 at 14–15.

Next, the Court explained the sentencing procedures, including that any Guidelines calculation was not binding on the court, and that Coker's sentence could be more or less severe than the Guidelines recommendation. Doc. 55 at 15–16. Coker testified that he understood the sentencing procedures, and that he understood that he was waiving his right to appeal except as to ineffective assistance of counsel claims. Doc. 55 at 16.

The Court also elicited from the Government the sentencing recommendation details of the plea agreement. Doc. 55 at 17. As part of the plea agreement, the Government would recommend a statutory maximum sentence, while Coker reserved the right to "argue against such an upward departure." Doc. 55 at 17. Coker testified—under oath— that he understood the terms of his plea agreement, and that nobody had made him any other promises or assurances to induce his guilty plea. Doc. 55 at 17. Coker also testified that nobody had threatened or otherwise coerced him into pleading guilty. Doc. 55 at 17–18.

Finally, Coker agreed with the Government's account of the facts supporting his guilty plea, and then pleaded guilty. Doc. 55 at 20–22. The Court accepted Coker's guilty plea, found him guilty, and ordered the preparation of a PSR. Doc. 55 at 25–26. Probation then prepared a PSR that calculated Coker's Guidelines range—using the 2021 Guidelines Manual—based on the offense and his criminal history. Doc. 38 at 5–37 (PSR ¶¶ 14–45, 101).

Because Coker possessed a firearm in connection with the commission or attempted commission of possession with intent to distribute methamphetamine, probation applied the cross-reference provision of U.S.S.G. § 2X1.1—pursuant to U.S.S.G. § 2K2.1(c)(1)(A)—and started with a base offense level of 30, under U.S.S.G. §§ 2D1.1(a)(5) and (c)(5). Doc. 38 at 5 (PSR ¶ 15). Probation then added 2 points because a deadly weapon was used during commission of the offense, pursuant to U.S.S.G. § 2D1.1(b)(1), and subtracted 3 points for Coker's acceptance of responsibility, pursuant to U.S.S.G. §§ 3E1.1(a) and (b). Doc. 38 at 5 (PSR ¶¶ 16, 23). This resulted in a total offense level of 29.

Next, probation calculated Coker's criminal history category. Probation derived 22 criminal history points from 18 adult criminal convictions:

- <u>0 points</u> from a 2008 conviction for misdemeanor failure to identify, giving false or fictitious information;

- <u>0 points</u> from a 2009 conviction for misdemeanor theft;

- <u>3 points</u> from a 2009 conviction for felony obstruction or retaliation, in which Coker threatened to kill a person if she pressed charges against him. Though he initially received probation, he later had that term of probation revoked and received 2 years in prison;

- <u>0 points</u> from a 2010 conviction for misdemeanor unlawful carrying of a weapon;

- <u>0 points</u> from a 2011 conviction for felony evading arrest in a motor vehicle, in which Coker nearly struck a deputy's vehicle before fleeing a traffic stop;

- <u>2 points</u> from a 2011 conviction for felony theft of property, in which Coker stole a motor vehicle;

- <u>1 point</u> from a 2013 conviction for misdemeanor driving while intoxicated;

- <u>2 points</u> from a 2013 conviction for misdemeanor driving while intoxicated;

- <u>2 points</u> form a 2014 conviction for misdemeanor assault, in which Coker assaulted his ex-girlfriend, slamming her head into a wall and throwing her onto a coffee table, causing her to lose consciousness and convulse. Coker continued to assault his convulsing ex-

girlfriend by repeatedly banging her head on the floor.
Coker then struck another female after she yelled at
Coker to stop assaulting his ex-girlfriend;

- <u>1 point</u> from a 2014 conviction for misdemeanor
possession of marijuana;

- <u>1 point</u> from a 2014 conviction for misdemeanor driving
while license suspended;

- <u>3 points</u> from a 2015 conviction for felony theft, in which
Coker stole and then sold a motor vehicle;

- <u>1 point</u> from a 2015 conviction for misdemeanor
possession of a prohibited weapon;

- <u>0 points</u> from a 2015 conviction for misdemeanor failure
to identify, giving false or fictious information;

- <u>1 point</u> from a 2016 conviction for misdemeanor assault
family member, in which Coker struck his sister in the
eye;

- <u>2 points</u> from a 2016 conviction for felony possession of
a controlled substance;

- <u>3 points</u> from a 2017 conviction for felony unauthorized
use of a motor vehicle; and

- <u>0 points</u> from a 2017 conviction for felony unauthorized
use of a motor vehicle.

Doc. 38 at 7–18 (PSR ¶¶ 25–44). Coker's 21 criminal history points

(reduced from 22 pursuant to U.S.S.G. § 4A1.1(c)) resulted in a criminal

history category of VI. Doc. 38 at 18 (PSR ¶ 45). With an offense score of

7

29 and a criminal history category of VI, Coker's Guidelines range was calculated at 151 to 188 months in prison. Doc. 38 at 37 (PSR ¶ 101). But because the statutory maximum sentence for an offense under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) is ten years, the Guidelines sentence became the statutory maximum. Doc. 38 at 37 (PSR ¶ 101).

Coker—via his attorney—objected to application of the cross-reference under U.S.S.G. § 2K2.1(c)(1)(A), arguing that application of the cross-reference required this Court to find that the firearm in Coker's possession facilitated or had the potential to facilitate an offense and that Coker transferred the firearm knowing or intending it to be used or possessed for that offense. Doc. 36 at 2 (citing *United States v. Johnson*, 559 F.3d 292, 295 (5th Cir. 2009)). Because there was allegedly no evidence that Coker "transferred the gun knowing it would be used to commit the other offense," Coker argued that the cross-reference should not apply. Doc. 36 at 3. Probation declined to follow Coker's objection and persisted in applying the cross-reference. Doc. 39 at 2.

### C. This Court sentences Coker to the statutory maximum.

The Court began Coker's sentencing hearing by overruling his objection to application of the cross-reference and asking if the

Government or Coker had any "additions, corrections, or objections" to the PSR. Doc. 60 at 2. The Court then adopted the PSR. Doc. 60 at 3.

Coker's attorney argued that, despite the Court overruling the objection to the cross-reference, the gun was not possessed in connection with the offense, and that using the methamphetamine offense to calculate the Guidelines range was not in the spirit of the plea agreement. Doc. 60 at 3–5. Coker's attorney pointed to Coker's history of drug addiction as a mitigating factor and asked that, despite Coker's extensive criminal history, he receive a below-Guidelines sentence of seven or eight years in prison. Doc. 60 at 6.

The Government disputed Coker's attorney's assertion that a sentence of ten years was not in the spirit of the plea agreement because the plea agreement included the Government's request for that sentence. Doc. 60 at 7. The Government also highlighted Coker's violent criminal history, asserting that Coker "richly deserved" 120 months in prison. Doc. 60 at 7–8.

Before sentencing him, the Court highlighted the extent of Coker's criminal history, stating that he had the "highest criminal history category" in the federal system and that the Court had never seen a

criminal history as long. Doc. 60 at 7–8. The Court then stated that after considering the factors in 18 U.S.C. § 3553(a), it felt that a sentence of 120 months was appropriate. Doc. 60 at 9. The Court further ordered Coker's sentence to run consecutively to "other pending cases or any undischarged sentences in other courts." Doc. 60 at 9.

The Court's judgment and sentence were imposed on June 2, 2023, and entered on June 8, 2023. Doc. 48 at 1. Despite waiving his right to appeal, Coker filed a notice of appeal on June 5, 2023. Doc. 46-1. However, the Fifth Circuit Court of Appeals later dismissed Coker's appeal—pursuant to Coker's motion—on October 19, 2023. Doc. 65.

## D.    Coker files the instant motion, seeking relief pursuant to 28 U.S.C. § 2255.

On January 3, 2025, Coker filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Doc. 66. Therein, Coker asserts that he received the ineffective assistance of counsel both prior to pleading guilty and prior to and during his sentencing hearing. Doc. 66 at 4–5. Coker's motion makes repeated references to a "Memorandum of Law in Support," including in a letter wherein Coker states that "The Memorandum will be forgoing." Doc. 66 at 4–5, 13. However, as of the filing of the United States' Memorandum in

10

Opposition and Motion to Dismiss, Coker has not filed any additional documents.

Because Coker's motion is overdue, and lacks any valid justification for its tardiness, it is subject to dismissal. Alternatively, Coker's vague and conclusory claims fail to show that he received ineffective assistance of counsel, and his motion should be denied without the need for an evidentiary hearing.

## II. Coker's motion for § 2255 relief is subject to dismissal as untimely.

The Antiterrorism and Effective Death Penalty Act of 1996 establishes a one-year statute of limitations in which a federal prisoner may file a § 2255 motion. *See* 28 U.S.C. § 2255(f). By default, the limitations period runs from the "date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). The "movant in a § 2255 proceeding has the burden of demonstrating that his filings are timely." *United States v. Duran*, 934 F.3d 407, 413 (5th Cir. 2019).

Ordinarily, when a defendant unsuccessfully appeals his conviction and sentence, his conviction becomes final 90 days later—when the time to file a petition for writ of certiorari in the United States Supreme Court expires. *See United States v. Plascencia*, 537 F.3d 385, 389 (5th Cir. 2008)

(citing *Clay v. United States*, 537 U.S. 522, 532 (2003)). But the Fifth Circuit has not definitively resolved the question of whether the § 2255(f)(1) limitations period begins to run immediately upon voluntary dismissal of a direct appeal. *See Mark v. Thaler*, 646 F.3d 191, 195 (5th Cir. 2011) ("[I]t may well be the case that when a federal criminal direct appeal is voluntarily dismissed, further review is no longer possible, and thus, the federal conviction immediately becomes final under AEDPA for purposes of any future petition under 28 U.S.C. § 2255 . . . ."); *United States v. Solis-Gonzalez*, 254 F.3d 1080, 1080 n.1 (5th Cir. 2001) ("Even if we were to consider the timeliness of appellant's petition, he would have difficulty persuading us that, although he voluntarily dismissed his appeal, the one-year period should be extended by the time limit for filing a petition for certiorari."); *United States v. Galloway*, 2023 WL 3659770, at *2 (S.D. Miss. May 25, 2023) (noting that this is an open question in the Fifth Circuit); *Silva v. United States*, 2022 WL 17069155, at *2 (N.D. Tex. Nov. 2, 2022) (Rutherford, M.J.) (same).

Other courts have, however, answered this question—with varying results. Courts in the Northern District of Texas, for example, have repeatedly held that the one-year period begins on the date an appeal is

12

voluntarily dismissed. *See Silva*, 2022 WL 17069155, at \*2, *report and recommendation adopted*, 2022 WL 17069568 (N.D. Tex. Nov. 17, 2022) (Boyle, J.); *McKnight v. United States*, 2016 WL 4029501, at \*2 (N.D. Tex. July 25, 2016) (McBryde, J.); *United States v. Martin*, 2008 WL 4211153, at \*4-6 (N.D. Tex. Sep. 12, 2008) (Solis, J.); *Horton v. Quarterman*, 2007 WL 4226151, at \*2 (N.D. Tex. Nov. 30, 2007) (Means, J.); *Brown v. Quarterman*, 2007 WL 949800, at \*2 n.1 (N.D. Tex. Mar. 28, 2007) (Kinkeade, J.) ("Where a habeas petitioner timely appeals his conviction but later dismisses the appeal, nearly every federal court to address the issue has held that the judgment becomes final for limitations purposes on the date the appeal is dismissed.").

*Martin* offers particularly persuasive analysis for starting the one-year clock from the date of dismissal. In *Martin*, the defendant voluntarily dismissed her appeal on April 2, 2004, and filed her § 2255 motion on April 20, 2005—one year and 18 days after her appeal was dismissed. *See Martin*, 2008 WL 4211153, at \*2. The district court looked to the Fifth Circuit's language in *Solis-Gonzalez*, 254 F.3d, at 1080 n.1 that a litigant would have "difficulty persuading" the Fifth Circuit that the one-year period should be extended by the time limit for filing a

petition for certiorari where the petitioner voluntarily dismissed his appeal. *See Martin*, 2008 WL 4211153, at *4. The district court also looked to *Impresa Construzioni Geom. Domenico Garufi v. United States*, 73 Fed. Cl. 718, 722 (Fed. Cl. 2006), for the holding that a party that moved to dismiss his appeal cannot file a petition for a writ of certiorari in the Supreme Court. *See Martin*, 2008 WL 4211153, at *4.

Finally, the district court relied on the reasoning in *United States v. Sylvester*, 2006 WL 695796, at *3 (M.D. Penn. Mar. 17, 2006). The court in *Sylvester* reasoned that the defendant's voluntary dismissal of his appeal was "an expression of the intent of the parties . . . not to pursue the appeal any further and [brought] the appeal to an end." *Id.* at *2. Thus, because a conviction is final when further direct review is foreclosed, the voluntary dismissal of the appeal started the one-year clock without any further delay because there were no issues for which a petition for a writ of certiorari could be granted, and therefore the writ was unavailable. *See id.* at *2.

District courts elsewhere have similarly held that the limitations period begins to run on the date of dismissal. Many of those courts rely on an opinion from the Third Circuit Court of Appeals, *United States v.*

14

*Sylvester*, 258 F. App'x. 411, 412 (3d Cir. 2007), dismissing an appeal from the district court because it was not reasonably debatable that the limitations period began to run when Sylvester voluntarily dismissed his appeal. *See, e.g., Sands v Akinbayo*, 2020 WL 871542, at *3 n.7 (D. Del. Feb. 21, 2020); *Secord v. United States*, 2017 WL 11617898, at *3 (W.D. Mich. Mar. 27, 2017); *United States v. Williams*, 2017 WL 57828, at *1 (N.D. Ohio Jan. 4, 2017); *Scott v. United States*, 2015 WL 10877548, at *13 n.12 (D. Wyo. Apr. 29, 2015); *Westmoreland v. Hetzell*, 840 F.Supp.2d 1275, 1279 (N.D. Ala. Dec. 29, 2011); *United States v. Goward*, 719 F. Supp. 2d 792, 794 (E.D. Mich. June 17, 2010).

Other courts, however, recognize that little consensus exists on this issue—even within the Third Circuit—and give § 2255 movants the benefit of calculating the one-year period starting from 90 days after the appeal is voluntarily dismissed. *See, e.g., Grant v. United States*, 2020 WL 7640938, at *4 (W.D.N.Y. Dec. 23, 2020) (relying on *Latham v. United States*, 527 F.3d 651, 651–52 (7th Cir. 2008), to hold that the limitations period begins 90 days after appeal is dismissed); *Philips v. Smith*, 2020 WL 5539081, at *4 n.6 (E.D. Pa. May 29, 2020) (acknowledging the apparent panel split in the Third Circuit—citing *United States v. Parker*,

416 F. App'x. 132 (3d Cir. 2011)—and collecting cases from the Eastern
District of Pennsylvania that have recognized the divide in the courts and
"generously deferred to the later date out of caution"). At least one district
court in the Southern District of Texas has declined to rule either way,
acknowledging the divide in authorities and instead addressing the
merits of the § 2255 motion. *See United States v. Champion*, 2006 WL
1293566, at *3 (S.D. Tex. May 6, 2006) (Head, C.J.).

Here, as discussed above, whether Coker's petition is timely
depends on what date the one-year statute of limitations began to run. If
the one-year period began on the date of dismissal, then Coker's § 2255
motion was due no later than October 19, 2024. But if Coker gets the
benefit of an additional 90 days from the date his appeal was dismissed,
then his § 2255 motion was not due until January 17, 2025.

Because Coker voluntarily dismissed his appeal—and because that
appeal was likely to be unsuccessful based on Coker's appellate waiver—
the Government respectfully moves this Court to dismiss Coker's § 2255
motion as untimely, in line with Fifth Circuit dicta and numerous
decisions from the Northern District of Texas. Coker offers no
explanation for his delay in filing his § 2255 motion, which relies entirely

on facts and legal authority available to him the moment he was sentenced.[2] Accordingly, dismissal of Coker's motion as untimely is appropriate.

But if this Court gives Coker the benefit of 90 days past the date his appeal was voluntarily dismissed, then the Court should deny Coker's vague and conclusory claims.

## III. Coker has failed to prove that he received the ineffective assistance of counsel.

A claim of ineffective assistance of counsel must meet *Strickland v. Washington*'s familiar two-part test. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). That test requires a movant to prove that his attorney performed deficiently, and that but-for that deficient performance, the result of the proceedings would have been different. *See id.* A failure to establish either prong defeats the claim. *See id.* at 697; *United States v. Lincks*, 82 F.4th 325, 330 (5th Cir. 2023).

To prove deficient performance, a movant must show that his counsel's performance was objectively unreasonable, falling outside the broad range of reasonable assistance. *See United States v. Kayode*, 777

---

[2] Thus disqualifying Coker from any of the statutory exceptions to the one-year default rule. *See* 28 U.S.C. § 2255(f)(2)–(4).

F.3d 719, 724 (5th Cir. 2014). Courts strongly presume counsel's performance falls within the wide range of reasonable professional assistance. *Premo v. Moore*, 562 U.S. 115, 121 (2011).

Not only must a movant alleging ineffective assistance prove that his attorney performed deficiently, but he must also prove that that deficiency prejudiced the outcome of the proceedings. *See Strickland*, 466 U.S. at 687. A defendant must "affirmatively prove" prejudice. *See Kayode*, 777 F.3d at 724 (quoting *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994)). A mere allegation of prejudice is not sufficient to satisfy *Strickland*'s second prong. *See id.*

Where a defendant claims that his attorney's deficient performance rendered his guilty plea involuntary, proving prejudice requires showing a reasonable probability that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See United States v. Batamula*, 823 F.3d 237, 240 (5th Cir. 2016) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

And where a defendant's ineffective assistance claims relate to his attorney's performance during sentencing, a showing of prejudice requires proof that, absent the attorney's deficient performance, the

defendant would have received a lower sentence. *See Lafler v. Cooper*, 566 U.S. 156, 165 (2012) ("[A]ny amount of additional jail time has Sixth Amendment significance.") (internal quotations omitted). Put another way, to demonstrate prejudice, the movant "must demonstrate that counsel's error led to an increase in the length of his imprisonment." *United States v. Cardenas-Cabrera*, No. 2:15-CR-52-2, 2016 WL 5871451, at *2 (S.D. Tex. Oct. 6, 2016) (citing *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (5th Cir. 2005)). Coker has not met his burden.

### A. Coker has failed to show that any alleged ineffective assistance of counsel induced his guilty plea.

In his first ground for relief, Coker claims that his attorney prior to his guilty plea ineffectively failed to communicate with Coker and inform him of "the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial"; failed to conduct an "adequate and independent pretrial investigation"; and failed to attempt to negotiate a favorable plea agreement with the Government. Doc. 66 at 4. Liberally construing Coker's allegations as a claim that he would not

have pleaded guilty absent these alleged deficiencies, this Court's oral admonishments and Coker's sworn plea testimony undermine this claim.

A defendant's "[s]olemn declarations in open court carry a strong presumption of verity." *United States v. Soliz*, 359 F. App'x. 466, 470 (5th Cir. 2009) (per curiam) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). This presumption of verity forms a "formidable barrier in any subsequent collateral proceedings." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge*, 431 U.S. at 73–74).

Prior to pleading guilty, Coker testified under oath that he understood the nature of the guilty plea proceedings, and that he understood the nature of his charge and the attendant penalties. Doc. 55 at 6, 9. He also testified that he understood that he had the right to plead not guilty, proceed to trial, and that he was forfeiting numerous trial rights by pleading guilty. Doc. 55 at 10–13. Accordingly, any claim that his attorney did not explain the consequences of pleading guilty and foregoing trial lacks credibility. Moreover, Coker cannot demonstrate prejudice from that alleged failure where the Court explained the information and Coker averred that he understood. *See Kayode*, 777 F.3d at 728 (no prejudice from attorney's failure to fully inform defendant of

20

immigration consequences of plea because, in part, defendant did not assert he would have sought a trial, and because Court's admonishments informed defendant of those consequences).

As to the remainder of his first ground for relief, Coker's vague and conclusory claims do not entitle him to relief. He alleges that his attorney did not conduct an "adequate and independent pretrial investigation," but does not describe or explain what the investigation would have uncovered or how it would have changed his decision to plead guilty. *See Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (An applicant "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."). Given the straightforward nature of Coker's criminal offense, it is unlikely that any additional investigation would have persuaded Coker to forego a favorable plea agreement and seek a trial.

Coker also states that his attorney failed to negotiate a "favorable plea agreement," but the record undermines this claim. As discussed above, Coker's attorney secured a plea agreement with the Government that capped Coker's sentencing exposure at ten years in prison, despite

his lengthy criminal history. Had Coker pleaded to the drug charge, as outlined in his PSR, the low end of his Guidelines range would have exceeded the statutory maximum of the charge he pleaded guilty to. Coker does not identify any more favorable offer that might have been available to him, and thus is not entitled to relief on this claim. *See United States v. Johnson*, No. 4:14-CV-196, 2014 WL 1930220, at *4 (N.D. Tex. May 14, 2014) (citing *Wolfe v. Dretke*, 116 F. App'x. 487, 495 (5th Cir. 2004) (To prove prejudice from not being offered a plea agreement, a movant must prove "the State would have offered a plea bargain . . . if [counsel] had pursued one."). This Court should deny Coker's first ground for relief.

### B. Coker has failed to show that he received ineffective assistance of counsel during sentencing.

In his second ground for relief, Coker claims that he received ineffective assistance of counsel before and during his sentencing because his attorney failed to: 1) "correctly" discuss and explain the PSR to Coker; 2) file "substantive objections" to the PSR; 3) argue for "mitigation of punishment"; and 4) object to Coker's sentence as substantively

unreasonable. Doc. 66 at 5. But as in his first ground, Coker's vague and conclusory claims do not entitle him to relief.

For each of Coker's list of alleged sentencing errors, he fails to explain how he was prejudiced. First, he does not explain how a better understanding of his PSR would have resulted in a lesser sentence. Nor does he explain how any explanation he received from his attorney was not "correct." Indeed, Coker was able to allocute at sentencing and ask for leniency based on his remorse for his crime and his struggles with substance abuse. Doc. 60 at 6. Coker does not discuss in his motion—and the record does not make clear—what a more thorough understanding of the PSR would have changed about Coker's allocution or the result of the sentencing hearing in general. This allegation does not entitle Coker to relief.

Coker's second claim—that his attorney did not file "substantive objections" to the PSR—is belied by the record. Coker's attorney objected to the PSR's use of the cross-reference provision of U.S.S.G. § 2K2.1(c)(1)(A) and then re-urged that objection during the sentencing hearing. Docs. 36, 60. Coker appears to ignore this objection, and fails to describe any other objection to the PSR that might have resulted in

lowering Coker's sentencing range. So the second part of Coker's second ground for relief is meritless and does not entitle him to relief.

Coker's third and fourth claims, raised together, assert that his attorney did not argue for "mitigation of punishment" or object to Coker's sentence as substantively unreasonable. But Coker's attorney submitted mitigation information to the Court prior to sentencing—in the form of a letter from Coker's mother requesting leniency. Doc. 41. Moreover, Coker's attorney asked the Court to sentence Coker below his Guidelines range based on mitigating circumstances like Coker's past struggles with drug and alcohol addiction and his failure to receive treatment. Doc. 60 at 5–7. So Coker's claim that his attorney did not argue for a lenient sentence is unfounded.

As for Coker's claim that his attorney failed to object to Coker's sentence as substantively unreasonable, he does not elaborate on this claim or explain why such an objection would have resulted in a lighter sentence. Coker's within-Guidelines sentence was presumptively reasonable. *See Rita v. United States*, 551 U.S. 338, 347 (2007) (reviewing court may apply a presumption of reasonableness to a sentence within a defendant's properly calculated Guidelines range). And Coker offers

nothing to refute that presumption. Given his extensive, violent criminal history, it is unclear how he could show that his within-Guidelines sentence was unreasonable. Accordingly, he has not shown that his attorney's failure to object to a presumptively reasonable sentence constituted ineffective assistance of counsel.

This Court should deny Coker's second ground for relief.

## IV. Conclusion

The Government respectfully asks this Court to dismiss Coker's § 2255 motion as untimely. Alternatively, the Government respectfully asks this Court to deny Coker's § 2255 motion without further proceedings. The record conclusively demonstrates no relief is appropriate, so no evidentiary hearing is necessary. *See United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983). Moreover, because reasonable jurists could not disagree with the denial of the § 2255 motion, this Court should not issue a certificate of appealability. *See United States v. Bernard*, 762 F.3d 467, 483 (5th Cir. 2014).

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney

CARMEN CASTILLO MITCHELL
Chief, Appellate Division

/s/ *Philip S. Harris*
PHILIP S. HARRIS
Assistant United States Attorney
Texas Bar No. 24086583
Attorneys for Respondent
1000 Louisiana Street, Ste. 2300
Houston, TX 77002
Phone: (713) 567-9000

## CERTIFICATE OF SERVICE

I, Philip S. Harris, Assistant United States Attorney certify that a true and correct copy of *United States' Memorandum in Opposition to and Motion to Dismiss Coker's 28 U.S.C. § 2255* was electronically filed with the United States District Clerk for the Southern District of Texas on **February 25, 2025**. On that date, a true and correct copy of the document was placed in the outgoing mail, for delivery via certified mail, return receipt requested, to the last address of record for movant:

Kyle Andrew Coker
Reg. No. 94249-509
McCreary USP
U.S. Penitentiary
P.O. Box 3000
Pine Knot, KY 42635

/s/ Philip S. Harris
PHILIP S. HARRIS
Assistant United States Attorney